IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MARY E. PRICE | : | CIVIL ACTION |
| *Plaintiff, pro se* | : | |
| | : | NO. 17-1922 |
| v. | : | |
| | : | |
| COMMONWEALTH CHARTER | : | |
| ACADEMY CYBER SCHOOL, *et al.* | : | |
| *Defendants* | : | |

NITZA I. QUIÑONES ALEJANDRO, J.                                                                                      APRIL 6, 2018

# MEMORANDUM OPINION

## INTRODUCTION

On April 25, 2017, Plaintiff Mary E. Price ("Plaintiff"), the parent of minor child T.R., and the aunt and legal guardian of minor child J.H., commenced this action, in her own right and on behalf of T.R. and J.H., against Defendants Commonwealth Charter Academy ("Defendant CCA"), Bureau of Special Education ("Defendant BSE"), and Ruth Furman ("Defendant Furman") (collectively, "Defendants"). [ECF 1]. In her initial complaint, Plaintiff asserted claims on her own behalf, and on the behalf T.R. and J.R., under the Individuals with Disabilities Education Act (the "IDEA"),[1] 20 U.S.C. §§ 1400 *et seq.*; Title II of the Americans with Disabilities Act (the "ADA"), 42 U.S.C. §§ 12101 *et seq.*; Section 504 of the Rehabilitation Act of 1973 ("Section 504" or "§ 504"), 29 U.S.C. § 794; and 42 U.S.C. § 1983 ("Section 1983" or "§ 1983") premised upon Defendants' failure to comply with, implement and/or enforce administrative due process decisions that concerned special education services for J.H. and T.R.

---

[1] The IDEA was amended and renamed the Individuals with Disabilities Education Improvement Act (the "Act"), effective July 1, 2005. *See* Pub. L. No. 108-446, 118 Stat. 2715 (2005). Notwithstanding this change in the name of the statute, courts and litigants, including the parties in this action, continue to refer to this statute as the IDEA. *See, e.g., H.E. v. Walter D. Palmer Leadership Learning Partners Charter School,* 873 F.3d 406, 408 (3d Cir. 2017). For purposes of clarity and consistency, this Court will refer to the Act as the IDEA in this Memorandum Opinion.

[ECF 3]. On July 21, 2017, Plaintiff filed an amended complaint ("the Amended Complaint"), which asserts the same claims against the same Defendants, but only on Plaintiff's own behalf. [ECF 17].

Presently, before this Court is a *motion to dismiss* filed by Defendants BSE and Defendant Furman ("Moving Defendants"),[2] pursuant to Federal Rules of Civil Procedure ("Rule") 12(b)(1) and 12(b)(6), which seeks the dismissal of all of the claims asserted against them in the Amended Complaint. [ECF 20]. Plaintiff has opposed the motion. [ECF 26]. For the reasons stated herein, the Moving Defendants' motion to dismiss is granted.

**BACKGROUND**

This Court will recite only those portions of the factual and procedural history necessary to resolve the instant motion. The relevant procedural history is as follows:

> J.H. and T.R. are students enrolled at CCA, a cyber charter school in Pennsylvania. (*See* Am. Compl. at ¶¶ 5, 8, 11). Plaintiff is J.H.'s aunt and legal guardian, and T.R.'s mother. (*See* Am. Compl. at Introduction). Minors J.H. and T.R. have been diagnosed with attention deficit hyperactivity disorder and a number of other learning disorders and, thus, were deemed eligible for special education services under the IDEA for the 2011-2012 and 2012-2013 school years, respectively. (*See id.* at ¶¶ 6-11).
>
> Plaintiff, proceeding *pro se*, initiated this action on behalf of herself, J.H., and T.R., by filing an application to proceed *in forma pauperis* ("IFP"). [ECF 1]. By Order dated May 1, 2017, the IFP application was granted and the Clerk of Court was directed to docket Plaintiff's complaint. [ECF 2]. Defendants were served with the summons and a copy of the complaint by the United States Marshal Service. [ECF 13]. Shortly thereafter, Plaintiff moved and was granted leave to amend her original complaint. [*See* ECF 15].
>
> On July 21, 2017, Plaintiff filed the operative Amended Complaint and asserted claims *only* on her own behalf (and not on behalf of J.H. and T.R.). In the Amended Complaint, Plaintiff charged Moving Defendants and CCA with failing to comply, implement, and/or enforce the administrative due process decisions

---

[2] Defendant CCA filed its own motion to dismiss, [ECF 21], which this Court will address separately.

issued on September 17, 2016, by a Pennsylvania special education hearing officer which addressed the sufficiency of J.H.'s and T.R.'s education under the IDEA.

Moving Defendants filed the underlying motion pursuant to Rules 12(b)(1) and 12(b)(6), and argue that Plaintiff's claims either fail to state a claim upon which relief can be granted or request relief beyond this Court's jurisdiction. [ECF 20].

When ruling on Moving Defendants' motion to dismiss, this Court must accept, as true, all relevant and pertinent factual allegations in the Amended Complaint and construe these facts in the light most favorable to Plaintiff. *See Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009); *Constitution Party of Pa. v. Aichele*, 757 F.3d 347, 357 (3d Cir. 2014) (standard applies to Rule 12(b)(1) motions). The salient allegations in the Amended Complaint are summarized as follows:

> In 2016, Plaintiff filed separate due process complaints against CCA on behalf of J.H. and T.R. On September 17, 2016, following nine days of evidentiary hearings, the assigned special education hearing officer issued a decision in each case (the "Decisions"). (*See* Am. Compl. at ¶¶ 1, 4). The Decisions ordered CCA to provide each student with up to 990 hours of compensatory education each calendar year "for as long as it takes for each student to achieve his [individualized education plan goals]" and for Plaintiff to select a third-party provider to deliver the compensatory education services. (*See id.* at ¶¶ 3, 5). The Decisions ordered CCA to pay for the educational services provided by a third party of parent's choice. (*Id.*). The Decisions did not direct CCA to pay for J.H. or T.R.'s transportation to and from school, their meals, or other expenses associated with the third-party educational provider's services. (*See generally id.*).

> On September 26, 2016, Plaintiff informed CCA that she had selected Woodlynde School ("Woodlynde") as the third-party provider in accordance with the directives set forth in the Decisions. (*Id.* at ¶ 18). Woodlynde sent Plaintiff an enrollment packet, which included a contract for Plaintiff to sign. (*Id.* at ¶ 19). The contract provided that Plaintiff would assume full responsibility for paying T.R. and J.H.'s tuition and any related fees. (*Id.* at ¶ 27). CCA informed Plaintiff that it would pay for T.R. and J.H.'s tuition, per the Decisions, but would not reimburse Plaintiff for the costs of their uniforms, lunches, and transportation to and from school. (*Id.* at ¶ 29). Plaintiff refused to sign the enrollment contract, and J.H. and T.R. were not enrolled at Woodlynde. (*See id.* at ¶¶ 18-22, 24).

On October 27, 2016, Plaintiff informed CCA that she had selected Lindamood-Bell Learning Processes ("LBLP") as an alternative third-party provider for J.H. and T.R. (*Id.* at ¶ 32). On November 22, 2016, CCA and LBLP entered into contracts agreeing that LBLP would provide educational services to J.H. and T.R. from November 7, 2016, through February 28, 2017. (*Id.* at ¶ 35). According to Plaintiff, CCA refused to fund the daily transportation and lunch for J.H. and T.R., and excluded Plaintiff from any contract negotiations with LBLP. (*Id.* at ¶¶ 33, 34).

On January 11, 2017, and January 19, 2017, Plaintiff filed complaints with the BSE on J.H.'s and T.R.'s behalf, respectively, alleging that CCA had not complied with the Decisions. (*Id.* at ¶ 48). Defendant Furman investigated the allegations pertaining to J.H., as set forth in the January 11, 2017 complaint. (*Id.* at ¶ 49). On January 26, 2017, Defendant Furman issued a three-page letter that set forth findings and a determination that CCA had fully complied with implementing the J.H. decision. (*See id.* at ¶ 50). Plaintiff alleges that Defendant Furman never contacted her about the complaint that she filed on T.R.'s behalf or made a determination as to whether CCA had fully complied with the Decision concerning T.R.'s education. (*Id.* at ¶ 74).

**LEGAL STANDARDS**

As noted, the instant motion to dismiss was filed pursuant to Rules 12(b)(1) and 12(b)(6). A court may grant a motion to dismiss an action under Rule 12(b)(6) if the complaint "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). When considering a Rule 12(b)(6) motion to dismiss, a court must "accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions." *Fowler*, 578 F.3d at 210-11. The court must determine "whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Id.* at 211 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)). The complaint must do more than merely allege the plaintiff's entitlement to relief: it must "show such an entitlement with its facts." *Id.* (citations omitted).

To determine the sufficiency of a complaint, "a court . . . must take three steps." *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016). First, a court must "tak[e] note of the elements a plaintiff must plead to state a claim." *Id.* (quoting *Iqbal*, 556 U.S. at 675).

4

Second, the court must identify allegations that are merely legal conclusions "because they . . . are not entitled to the assumption of truth." *Id.* While a complaint need not assert detailed factual allegations, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. Third, a court should assume the veracity of all well-pleaded factual allegations and "then determine whether they plausibly give rise to an entitlement to relief." *Connelly*, 809 F.3d at 787 (quoting *Iqbal*, 556 U.S. at 679).

A court may determine that a complaint's factual allegations are plausible if the court is able "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)) (alterations in original). In other words, "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Thus, to survive a motion to dismiss under Rule 12(b)(6), "a plaintiff must allege facts sufficient to 'nudge [his] claims across the line from conceivable to plausible.'" *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008) (quoting *Twombly*, 550 U.S. at 570). "Although the plausibility standard 'does not impose a probability requirement,' it does require a pleading to show 'more than a sheer possibility that a defendant has acted unlawfully.'" *Connelly*, 809 F.3d at 786 (citations omitted). Reviewing the plausibility of the complaint is a "context-specific" inquiry and requires a court to "draw on its experience and common sense." *Iqbal*, 556 U.S. at 663-64.

Though *pro se* filings "must be held to less stringent standards," such filings must contain "sufficient factual matter[,] accepted as true[,] to state a claim to relief that is plausible on its

face." *Fantone v. Latini*, 780 F.3d 184, 193 (3d Cir. 2015) (quoting *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972), and *Iqbal*, 556 U.S. at 678)).

The standard for a Rule 12(b)(1) motion to dismiss is somewhat different. Under Rule 12(b)(1), challenges may be either facial or factual. *Constitution Party*, 757 F.3d at 357. A facial challenge asserts that the complaint does not allege sufficient grounds to establish subject matter jurisdiction. *Id*. Where a Rule 12(b)(1) motion is filed prior to an answer, as is the case here, it will be considered a facial challenge to jurisdiction. *Id.* at 358. When considering a facial challenge to a complaint, a court must apply the same standard of review that would be applied to a motion to dismiss under Rule 12(b)(6). *Id*. As such, well-pleaded factual allegations are taken as true, and reasonable inferences are drawn in the plaintiff's favor. *Id*. Thus, a complaint will be dismissed for lack of jurisdiction only if it appears that the plaintiff will not be able to assert a plausible claim of subject-matter jurisdiction. *See Cardio-Med. Assocs., Ltd. v. Crozer-Chester Med. Ctr.*, 721 F.2d 68, 75 (3d Cir. 1983).

**DISCUSSION**

In the Amended Complaint, Plaintiff asserts four claims against the Moving Defendants: a violation of the IDEA; a violation of Title II of the ADA; a violation of § 504; and a claim for First Amendment retaliation under § 1983.[3] Moving Defendants seek to dismiss the claims

---

[3] Plaintiff also cites "the enforcement provisions of Title VI of the Civil Rights Act of 1964." (*See* Am. Compl. at Introduction). She presumably does so only because the Rehabilitation Act makes the "remedies, procedures, and rights" set forth in Title VI of the Civil Rights Act of 1964 available to those whose rights thereunder are violated. *See* 29 U.S.C. § 794(a)(2); *see also Barnes v. Gorman,* 536 U.S. 181, 185 (2002) ("[T]he remedies for violations of . . . [§ 504] are coextensive with the remedies available in a private cause of action brought under Title VI . . . ."). Section 601 of Title VI provides that "[n]o person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 42 U.S.C. § 2000d. To the extent that Plaintiff is attempting to assert an independent claim under Title VI, she fails to state a cognizable claim because Title VI does not authorize a private cause of action directly against a federal funding agency to obtain monetary or injunctive relief. *Wood v. Rendell,* 1995 WL 120648, at *3 (E.D. Pa. Mar. 16, 1995); *Kaitlin C. v.*

6

asserted against them in the Amended Complaint, and argue that: (1) the IDEA, ADA, and § 504 claims asserted against Defendant Furman should be dismissed, as a matter of law, because these statutes do not provide for individual liability; (2) the Eleventh Amendment bars Plaintiff's § 1983 claims against Defendant BSE and Defendant Furman; and (3) Plaintiff's IDEA, ADA, and § 504 claims against Defendant BSE should be dismissed pursuant to Rule 12(b)(6) because these claims lack the necessary factual support to impose liability. This Court will separately address each of these arguments.

### *IDEA, ADA, and § 504 Claims Against Defendant Furman*

Plaintiff purports to assert IDEA, ADA, and § 504 claims against Defendant Furman in her official capacity as the Special Education Advisor for Defendant BSE. (*See* Am. Compl. at Introduction). Notably, the Amended Complaint seeks only declaratory relief and monetary damages, as opposed to any form of prospective injunctive relief. (*See id.*). In their motion, Moving Defendants seek to dismiss Plaintiff's § 504, IDEA and ADA claims against Defendant Furman on the ground that these claims are duplicative of the claims against Defendant BSE, the real party in interest. There is no dispute that Defendant Furman is employed by Defendant BSE. There is also no dispute that Defendant BSE is a government entity.[4] Thus, "when a suit against individual defendants would be duplicative of those against a government entity, which is also sued, the claims against the individuals should be dismissed as the government entity is the

---

*Cheltenham Twp. Sch. Dist.,* 2010 786530, at *5 (E.D. Pa. Mar. 5, 2010). Moreover, Title VI provides "a private cause of action for intentional discrimination only." *Pryor v. Nat'l Collegiate Ath. Ass'n*, 288 F.3d 548, 563 (3d. Cir. 2002). The Amended Complaint offers conclusory allegations that Defendants collectively violated Title VI, but Plaintiff fails to allege any set of facts that indicate there was intentional discrimination by Moving Defendants on the "ground of race, color, or national origin," which would violate § 601. Accordingly, to the extent that Plaintiff seeks to allege a Title VI claim against Moving Defendants, that claim is dismissed pursuant to Rule 12(b)(6).

[4] Defendant BSE is an extension of the Pennsylvania Department of Education and, therefore, qualifies as a government entity for the purpose of this analysis. *See Blunt,* 559 F. Supp. 2d at 567-68 (defining BSE as a government entity).

real party in interest." *Blunt v. Lower Merion Sch. Dist.,* 559 F. Supp. 2d 548, 568 (E.D. Pa. 2009); *see also Gregory v. Chehi,* 843 F.2d 111, 120 (3d Cir. 1988) (reasoning that claims raised against local officials "in their official capacities [ ] are only a duplication of the counts against the Township itself"); *Pennington v. Midd-West Sch. District,* 2012 WL 2328198, at *1 (M.D. Pa. June 19, 2012) ("Where the public entity that employs the individual defendants is also named as a defendant, the suit against the individual defendants is redundant"). Therefore, under this legal framework, the IDEA, ADA, and § 504 claims asserted against Defendant Furman are duplicative of those asserted against Defendant BSE, the government entity for whom she worked. Accordingly, the IDEA, ADA, and § 504 claims asserted against Defendant Furman are dismissed since Plaintiff brings identical claims against Defendant BSE.

## § 1983 Claims Against Defendants BSE and Furman

Moving Defendants have also moved to dismiss the § 1983 claims against them on the basis that they are immune from suit under the Eleventh Amendment. In response, Plaintiff argues, without citing to any legal authority, that no such immunity exists. Plaintiff is, however, mistaken.

>The Eleventh Amendment of the United States Constitution provides that:
>
>The Judicial power of the United States shall not be construed to extend to any suit in law or equity commenced or prosecuted against any one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.

U.S. Const. Amend. XI.

The Eleventh Amendment has been "interpreted to protect an unconsenting state from 'suit in federal court by its own citizens as well as those of another state.'" *Blanciak,* 77 F.3d at 694 (quoting *Pennhurst State School v. Halderman,* 465 U.S. 89 (1984)). The Eleventh Amendment extends to "suits against departments or agencies of the state having no existence

8

apart from the state." *Laskaris v. Thornburgh*, 661 F.2d 23, 25 (3d Cir. 1981). The only exception to this principle occurs where the "state waives its immunity and consents to suit in federal court" and/or where Congress "specifically abrogate[d] the states' Eleventh Amendment immunity." *Blanciak*, 77 F.3d at 694. However, "Congress has not abrogated the States' immunity from [§] 1983 actions," *Nails v. Pennsylvania Dep't of Transp.*, 414 F. App'x 452, 455 (3d Cir. 2011), and the Commonwealth of Pennsylvania has withheld its consent to suit in federal court. *See* 42 Pa. Cons. Stat. § 8521(b). Thus, Pennsylvania state agencies and officials acting in their official capacity are entitled to immunity from suit under the Eleventh Amendment. *Lombardo v. Pennsylvania Dept. of Public Welfare,* 540 F.3d 190, 194-95 (3d Cir. 2008).

As noted, Defendant BSE is a Pennsylvania state agency and, as such, is immune from § 1983 suits. *See, e.g., C.H. v. Olivia,* 226 F.3d 198, 201 (3d Cir. 2000) (dismissing § 1983 claim against a state educational agency on the basis that it was immune from suit under the Eleventh Amendment). Accordingly, Plaintiff's § 1983 claim against Defendant BSE is dismissed. Likewise, Defendant Furman, as a state agent or actor, is entitled to the same protections afforded by the Eleventh Amendment. *See Smith v. Lanigan*, 656 F. App'x 586, 588 (3d Cir. 2016) (affirming the dismissal of a plaintiff's § 1983 claims for monetary relief against state actors in their official capacities on the basis that they were entitled to Eleventh Amendment immunity). Accordingly, Plaintiff's § 1983 claim against Defendant Furman is also dismissed.

### *ADA, IDEA and § 504 Claims Against Defendant BSE*

Defendant BSE argues that Plaintiff's remaining claims should be dismissed because these claims lack the requisite factual support required under *Iqbal* and *Twombly*. Plaintiff's ADA, IDEA, and § 504 claims against Defendant BSE are all premised upon Defendant BSE's

9

alleged failure to investigate CCA's obligation to provide J.H. and T.R. a free appropriate public education ("FAPE") and enforce CCA's compliance with the Decisions. (*See* Am. Compl. at ¶¶ 85-90). This Court will address the factual and legal sufficiency of these three claims.

*ADA and § 504 Claims*

Section 504 of the Rehabilitation Act provides, in part, that "[n]o otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program" receiving federal funding. 29 U.S.C. § 794(a). This prohibition applies to programs operated by a state agency. *Id.* § 794(b)(1)(A). The ADA contains nearly identical language,[5] and the Third Circuit has held that the same standards apply to claims arising under both statutes. *Ridley Sch. Dist. v. M.R.,* 680 F.3d 260, 282-83 (3d Cir. 2012) (stating that the "substantive standards for determining liability under [§ 504] and the ADA are the same"). Thus, to make out a claim under either statute, a plaintiff must allege facts sufficient to show that the plaintiff "(1) has a disability; (2) was otherwise qualified to participate in a school program; and (3) was denied the benefits of the program or was otherwise subject to discrimination because of her disability." *Chambers v. Sch. Dist. of Phila. Bd. of Educ.,* 587 F.3d 176, 189 (3d Cir. 2009) (citing *Nathanson v. Med. Coll. Of Pa.,* 926 F.2d 1368, 1380 (3d Cir. 1991)). Here, Plaintiff does not assert the ADA and § 504 claims on *behalf* of J.H. or T.R., the minors with the disabilities, but rather brings these claims on behalf of herself. Nowhere in the Amended Complaint does Plaintiff allege facts sufficient to show that *she* was disabled and/or qualified to

---

[5] Title II of the ADA provides, in relevant part:

[N]o qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity.

42 U.S.C. § 12132.

participate in a school program and/or was denied the benefits of the program or was otherwise subject to discrimination because of her disability.[6] Accordingly, because Plaintiff has not alleged facts sufficient to support any of the requisite elements of either claim, the ADA and § 504 claims, as asserted, are dismissed.

*IDEA Claim*

Plaintiff has also asserted an IDEA claim against Defendant BSE. Moving Defendants argue that Plaintiff has failed to state an IDEA claim against it because the Amended Complaint alleges no facts attributable to the state agency that could form the basis of liability under the IDEA. This Court agrees.

To provide context to Moving Defendants' arguments, a brief overview of the IDEA is necessary. The IDEA requires institutions that receive federal education funding to provide all children with disabilities with a "free appropriate public education" or "FAPE." 20 U.S.C. § 1400(d)(1)(A); § 1412(a)(1)(A); *Endrew F. ex rel. Joseph F. v. Douglas Cty. Sch. Dist.*, 137 S. Ct. 988, 993 (2017); *D.K. v. Abington Sch. Dist*., 696 F.3d 233, 244 (3d Cir. 2012). Pursuant to the IDEA, Congress provides federal funds to each state that submits a plan with policies and procedures to ensure that eligible students with disabilities receive FAPE. 20 U.S.C. §§ 1411-1412. In turn, states, through their respective State Education Agencies ("SEA"),[7] apportion

---

[6] This Court notes that although this argument was not raised in Moving Defendants' motion to dismiss, it was raised and briefed by Defendant CCA in its motion to dismiss. [ECF 21]. Both motions were served on Plaintiff, who filed one response in opposition to both motions. [ECF 26]. Although Plaintiff does not address this argument in her response, this Court finds that she had sufficient notice and knowledge of the potential bases for the dismissal of IDEA, ADA, and § 504 claims.

[7] A "State Educational Agency" is "the State board of education or other agency or officer primarily responsible for the State supervision of public elementary schools and secondary schools . . . ." 20 U.S.C. § 1401(32).

these federal funds to their Local Education Agencies ("LEA")[8] if the LEAs "submit a plan that provides assurances to the [SEA]" that the LEA meets certain IDEA eligibility requirements. 20 U.S.C. § 1413(a). LEAs are responsible for identifying and evaluating students with disabilities, developing and implementing individualized education programs ("IEPs"),[9] and providing educational programming and services to their students. 20 U.S.C. § 1414; 22 Pa. Code §§ 711.21-711.25, 711.41, 711.43-711.46.

Though the LEA is the entity that actually provides services to children under the IDEA, it is the SEA that "retains primary responsibility to ensure that all children with disabilities receive the education that is their right under the IDEA." *Charlene R. v. Solomon Charter Sch.*, 63 F. Supp. 3d 510, 513 (E.D. Pa. 2014); *see also* 20 U.S.C. § 1412(a)(11)(A), § 1413(g)(1); *Kruelle v. New Castle Cty. Sch. Dist.*, 642 F.2d 687, 696 (3d Cir. 1981). "The SEA is responsible for ensuring that LEAs comply with the mandates of the IDEA in providing educational services to those eligible students." *Charlene R.*, 63 F. Supp.3d at 513 (citing 20 U.S.C. § 1412(a)(11)(A)). In addition, when an SEA is notified that an LEA is unwilling or unable to provide special educational services, the SEA is responsible for stepping in and providing the educational services. 20 U.S.C. § 1413(g). In that regard, the "IDEA delegates

---

[8] A "Local Education Agency" is defined as:

> a public board of education or other public authority legally constituted within a State for either administrative control or direction of, or to perform a service function for, public elementary schools or secondary schools in a city, county, township, school district, or other political subdivision of a State, or for such combination of school districts or counties as are recognized in a State as an administrative agency for its public elementary or secondary schools.

20 U.S.C. § 1401(19)(A).

[9] The IEP is a "written statement for each child with a disability" that includes a statement of the child's: (1) present levels of achievement and performance; (2) measurable annual goals; and (3) the special education and supplementary aids and services to be provided to the child, as well as other details regarding the child's educational program. 20 U.S.C.§ 1414(d)(1)(A)(I-IV).

supervisory authority to the SEA, which is responsible for administering funds, setting up policies and procedures to ensure local compliance with IDEA, and filling in for the LEA by providing services directly to students in need where the LEA is either unable or unwilling to establish and maintain programs in compliance with IDEA." *Charlene R.*, 63 F. Supp. 3d at 513 (quoting *Gadsby v. Grasmick*, 109 F.3d 940, 943 (4th Cir. 1997)).

The IDEA provides, in pertinent part, that:

[t]he [SEA] is responsible for ensuring that –
- (i) the requirements of [the IDEA] are met;
- (ii) all educational programs for children with disabilities in the State, including all such programs administered by any other State agency or local agency-
    - (I) are under the general supervision of individuals in the State who are responsible for educational programs for children with disabilities; and
    - (II) meet the educational standards of the [SEA].

20 U.S.C. § 1412(a)(11)(A). SEAs, like Defendant BSE, may be responsible for violations of the IDEA when the state agency in some way "[fails] 'to comply with its duty to assure that the IDEA's substantive requires are implemented.'" *John T. v. Iowa Dep't of Educ.,* 258 F.3d 860, 864-65 (8th Cir. 2001) (quoting *Gadsby v. Grasmick,* 109 F.3d 940, 952 (4th Cir. 1997)); *see also Beth V. v. Carroll,* 87 F.3d 80 (3d Cir. 1996). "[S]ystemic violation of the State's responsibilities under the IDEA might give rise to state liability." *J.D.G. v. Colonial Sch. Dist.,* 748 F. Supp. 2d 362, 370 (D. Del. 2010) (citing *Reinholdson v. Minnesota,* 346 F.3d 847, 851 (8th Cir. 2003)). "A systemic claim is one which 'implicates the integrity of the IDEA's dispute resolution procedures themselves, or requires restructuring of the education system itself in order to comply with the dictates of the [IDEA].'" *J.D.G.,* 748 F. Supp. 2d at 370 (quoting *Mrs. M. v. Bridgeport Bd. of Educ.,* 96 F. Supp. 2d 124, 133 n.12 (D. Conn. 2000)).

In the Amended Complaint, Plaintiff alleges that Defendant Furman failed to accurately identify, document, and/or investigate all of the relevant issues raised in the administrative complaints Plaintiff filed with Defendant BSE. (*See* Am. Compl. at ¶¶ 67-82). Plaintiff does not complain of any systemic failures on the part of Defendant BSE or that Defendant BSE's dispute resolution procedures themselves violate the dictates of the IDEA. Thus, the factual allegations directed toward Defendant Furman are insufficient to raise a right to relief against Defendant BSE "above the speculative level." *Twombly,* 550 U.S. at 555. Accordingly, Moving Defendants' motion to dismiss is granted on this claim.

**CONCLUSION**

For the reasons stated herein, the motion to dismiss is granted and all claims asserted against Moving Defendants are dismissed. An Order consistent with this Memorandum Opinion follows.

NITZA I. QUIÑONES ALEJANDRO, U.S.D.C. J.